UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRAMELLE THOMPSON, Individually, and )
as Mother, Guardian and next of friend of )
M.W., a minor; DOROTHY ALLEN, and )
JAUQWAUN TRIPLETT, )
  )
            Plaintiffs, )
  )
     vs. )
  )
GATEWAY FINANCIAL SERVICES, )
INC., et al., )
  )     10 C 7658
            Defendants. )
_____ )
GATEWAY FINANCIAL SERVICES, INC., )
  )
            Cross-Plaintiff, )
  )
     vs. )
  )
EAGLE RECOVERY SYSTEMS, INC., )
  )
            Cross-Defendant. )

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

Now before the Court are Defendants Gateway Financial Services, Inc.'s ("Gateway") and Eagle Recovery Systems, Inc.'s ("Eagle") (together "Defendants") individual motions for partial summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, Gateway's motion is denied in part and granted in part, and Eagle's motion is denied in part and granted in part.

# BACKGROUND[1]

Plaintiffs Tramelle Thompson ("Thompson") and her children M.W., a minor, and Jauqwaun Triplett ("Triplett") (together "Plaintiffs") filed this suit after Defendants' unsuccessful attempt to repossess her automobile. Thompson purchased a 2000 Dodge Stratus sometime prior to September 2009. Gateway, a Michigan corporation, financed the loan to Thompson. The car was security for the loan. By December 1, 2009, Thompson was delinquent on her loan payments. Gateway retained Eagle to repossess the car.

One evening in December 2009, Thompson was driving her car home with Triplett sitting in the passenger seat. As she approached her driveway, Thompson noticed two individuals sitting in a tow truck parked on the street in front of her home. The two individuals were Eagle employees Timothy O'Donohue ("O'Donohue") and David Grunder ("Grunder"). They were peering toward Thompson's home as she pulled the car into her driveway. Thompson parked the car in the driveway. O'Donohue walked to her vehicle and had a brief conversation with Thompson. O'Donohue then began to strike her car with a flashlight while repeatedly yelling, "Bitch, get out of the car!" O'Donohue walked around to the passenger side, near

---

[1] Although the Defendants dispute the Plaintiffs' version of the events underlying this lawsuit, they stipulate to the following facts for purposes of deciding this motion only. *See* N.D. Ill. L.R. 56.1(b)(3)(B)-(C).

where Triplett was sitting, and continued to scream and hit the car with the flashlight. Grunder then backed the tow truck in the driveway, blocking the car's path onto the street. Triplett, a diabetic, became frightened, screamed, and urinated on himself. Thompson then cut the wheel to the side and streaked across the lawn on her way to the road and ultimately a family member's home. Triplett continued to scream and cry as Thompson was driving. Afterward, Thompson noticed that the car suffered several dents, a cracked window, chipped paint, a cracked headlight, and a broken taillight. Triplett testified that he injected himself with insulin after leaving the driveway as a result of elevated blood-sugar level.

M.W., Thompson's minor son, was asleep inside Thompson's home prior to the incident. He was awakened when O'Donohue knocked on the home's front exterior window while calling Thompson's name. M.W., an asthma sufferer, began to breathe heavily and needed to use an inhaler to regulate his breathing. He then heard what sounded like gunshots, ran to the home's front door, where he witnessed the entire incident unfold.

Thompson moved to Indiana as a result of the repossession incident. She received counseling from Reverend Bernard Clark in June of 2012 and Reverend Jerome Powell. Thompson testified that she experiences four or five headaches per

month since the incident and increased anxiety out of fear that a similar incident will occur.

Plaintiffs filed the instant six-count lawsuit against Defendants. The Plaintiffs are suing Eagle for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (Count I), for a phone call made to Thompson prior to the repossession attempt; breaching the peace during the commission of a repossession under 810 ILCS 5/9-609(b)(2) (Count II); negligent hire, retention, and supervision of O'Donohue and Grunder (Count V); and willful and wanton hire, retention, and supervision of O'Donohue and Grunder (Count VI). Gateway is being sued for breaching the peace under 810 ILCS 5/9-609(b)(2) (Count II); negligent hire, retention, and supervision of Eagle (Count III); and willful and wanton hire, retention, and supervision of Eagle (Count IV).

Gateway and Eagle now seek partial summary judgment. Both Defendants argue that they are entitled to judgment as a matter of law against M.W. and Triplett with respect to the breach of peace claim and the negligent and willful and wanton hire, retention, and supervision claims in their entirety. In addition, Gateway's motion seeks summary judgment with respect to the breach of peace claim in its entirety. Eagle's motion argues for judgment that the availability of damages for emotional distress is

precluded to Plaintiffs as a matter of law, and for judgment against M.W. and Triplett with respect to the FDCPA claim.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the nonmovant. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). The Court construes all facts and draws all reasonable inferences in favor of the nonmovant. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2010).

## DISCUSSION

### I.   Breach of Peace (Count II)

#### A.   Defendants' Motions for Judgment Against M.W. and Triplett

The Defendants argue that M.W. and Triplett lack standing to bring a claim under 810 ILCS 5/9-609 ("Repossession Statute"). The Repossession Statute conditions a secured party's lawful repossession of collateral on its refraining from breach the peace. 810 ILCS 5/9-609(b)(2). The right to sue under the Repossession Statute is limited to

debtors, obligors, or holders of a security interest in the repossessed collateral. *Id.* 5/9-625(c)(1) ("Remedies Statute").

Here, Thompson is the only party to this lawsuit who owned the car. Plaintiffs submit no evidence suggesting that M.W. or Triplett held any interest cognizable under the Remedies Statute. Because M.W. and Triplett do not satisfy the statutory standing requirements, the Defendants' motions for summary judgment are granted as to the claims under the Repossession Statute.

### B. Gateway's Motion for Judgment on Entire Claim

Gateway argues that it cannot be held liable under the Repossession Statute because no agency relationship existed between it and Eagle. In so doing, it reprises the same argument that this Court refuted after Gateway first raised it in a motion to dismiss. *See Thompson v. Gateway Fin. Servs.*, No. 10 C 7658, 2011 U.S. Dist. LEXIS 40766, at *3-5 (N.D. Ill. Apr. 14, 2011). We denied Gateway's motion to dismiss because Comment 3 of the Repossession Statute instructs courts to hold a secured party liable for breach of the peace for conduct undertaken on the secured party's behalf, notwithstanding the absence of an agency relationship. *Id.* at *4. Gateway fails to raise any evidence or case law that would lead the Court to stray from its prior ruling. Gateway's motion for summary judgment as to the Repossession Statute is denied.

## II. Negligent and Willful and Wanton Hire, Retention and Supervision (Counts II-VI)

Defendants argue that they are entitled to summary judgment with respect to Plaintiffs' claims for negligent and willful and wanton hire, retention, and supervision. To survive summary judgment on an action for negligent hire, retention, or supervision, a plaintiff must establish: (1) that the employer knew or should have known that the employee had a particular unfitness for the position which created danger for others; (2) such unfitness was known or should have been known at the time of the employee's hiring, retention, or supervision; and (3) this particular unfitness proximately caused harm to the plaintiff. *Van Horne v. Muller*, 705 N.E.2d 898, 904 (Ill. 1998). A plaintiff bringing a claim for willful and wanton conduct must establish that the defendant maintained a deliberate intent to do harm, or a conscious disregard for the plaintiff's well-being. *Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012).

The evidence in the record demonstrates that both Gateway and Eagle were unaware that their employees – Eagle, and O'Donohue and Grunder, respectively – were unfit for their positions. Plaintiffs fail to put forward any evidence establishing that the employees in this matter were in fact unfit, or that Gateway or Eagle should have been wary of their respective employees' fitness for their position. In fact, Plaintiffs fail to address Defendants' arguments at all. Because the undisputed evidence

would not allow a jury to find for Plaintiffs for negligent or willful and wanton hire, retention, and supervision, the Defendants' motion for summary judgment on Plaintiffs' negligent and willful and wanton hire, retention, and supervision claims are granted.

## III. FDCPA (Count I)

Eagle asserts that it is entitled to summary judgment against Triplett and M.W. because they, as non-debtors, lack standing to bring an FDCPA claim.

"Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973). The FDCPA was enacted in 1977 to discourage abusive debt collection practices, ensure that debt collectors who abstain from abusive practices are not competitively disadvantaged, and promote consistent state action to protect consumers. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010). Unless a provision otherwise limits the right of action, the FDCPA's enforcement statute imposes liability on "any debt collector who fails to comply with any provision of this title with respect to any person." 15 U.S.C. § 1692k(a). The FDCPA's plain language permits non-debtors to bring a lawsuit under the statute where otherwise not limited. *See Swearingen v. Portfolio Recovery Assocs.*, No. 11 C 01051, 2012 U.S. Dist. LEXIS 136434, at *8-10 (N.D. Ill. Sept. 24, 2012) (collecting cases). Eagle fails to point out any limitation within the FDCPA that would

exclude M.W. and Triplett from bringing their claim. It instead asks the Court to read a limitation into the FDCPA that Congress did not intend. We decline to do so. Eagle's motion for summary judgment as to the FDCPA claim is denied.

## IV.  Damages for Emotional Distress

Eagle argues that Plaintiffs should be barred from recovering for emotional distress on their remaining claims. The Seventh Circuit has "maintained a strict standard for a finding of emotional damage because they are so easy to manufacture." *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 609 (7th Cir. 2005) (citation omitted). Determining whether evidence of emotional distress supports an award of damages depends on "the direct evidence of emotional distress and the circumstances of the act that allegedly caused the distress." *United States v. Balistrieri*, 981 F.2d 916, 932 (7th Cir. 1992). If an injured party's testimony is the only proof of emotional damages, she must explain the circumstances of the injury in reasonable detail and not rely on conclusory statements. *Ruffin-Thompkins*, 422 F.3d at 609. Less detailed evidence may nevertheless serve to create a genuine issue of material fact if the event giving rise to the emotional injury is "so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (*citing Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003)).

The Plaintiffs submit no evidence to support damages for emotional injury besides their own testimony. They offer no medical records into evidence, since none of the Plaintiffs visited a physician as a result of their distress. The only extrinsic evidence touching on the Plaintiffs' emotional distress is the testimony of Reverends Clark and Powell. Although the pastors' testimony reflects that Thompson and Triplett sought their counsel, they offer no evidence that speaks to the Plaintiffs' emotional injury arising from the incident. We therefore conclude that the Plaintiffs' testimony is the only evidence supporting a finding of emotional distress.

Moving to the Plaintiffs' testimony, M.W. testified that the incident awoke him and caused him to use an inhaler. Triplett stated that the incident caused him to urinate his pants and to later inject himself with insulin in order to regulate his blood-sugar. Finally, Thompson testified that she continues to suffer four to five headaches a month since the incident and that she harbors a fear that another repossession incident will occur, specifically while she is at home or in the parking lot of her place of employment. None of the Plaintiffs expound on the circumstances surrounding the emotional harm done to them or give details about the pain they suffered. Although their testimony fails to paint a full picture of the emotional distress they claim to have experienced, we look to the events underlying their injury to assess whether it is reasonable to infer an emotional injury. *See Balistrieri*, 981 F.2d at 932.

Although a severely degrading event may lead to an inference of emotional distress, the Seventh Circuit is loath to make such a finding where the evidence is wholly self-serving and conclusory. *See Ruffkin-Thompkins*, 422 F.3d at 610 (finding that plaintiff's lack of supporting her claim of emotional distress with any specificity foreclosed a finding that the facts underlying her injury were inherently degrading or humiliating); *see also Wantz*, 386 F.3d at 834 (plaintiff's testimony that he was "humiliated and embarrassed" and that dealing with credit reporting agencies was "mentally and emotionally distressful" was not "so degrading that a jury could infer the existence of emotional distress."). The Seventh Circuit has nevertheless recognized that an action involving racial discrimination, "one of the relics of slavery," could reasonably be expected to cause emotional distress. *Id.* (*citing Seaton v. Sky Realty Co.*, 491 F.2d 634, 636 (7th Cir. 1974)). Here, Plaintiffs support their claim for emotional injury with only their own testimony. Furthermore, they fail to elaborate on the type, severity, or frequency of their anguish. In light of Plaintiffs' threadbare evidence of emotional distress, the Court finds that the incident was not so degrading as to excuse Plaintiffs' failure to explain their emotional distress with more specificity. Accordingly, Plaintiffs are precluded from recovering damages for emotional distress.

Because no material issue of fact exists as to Plaintiffs' lack of emotional distress, Eagle's motion for summary judgment is granted.

## CONCLUSION

For the aforementioned reasons, Gateway's and Eagle's partial motions for summary judgment are denied in part and granted in part. Thompson's claim under the Repossession Statute survives the Defendants' motions, as do Plaintiffs' claims under the FDCPA. M.W. and Triplett are barred from proceeding on their claim under the Repossession Statute, and Plaintiffs' claims for negligent and willful and wanton hire, retention, and supervision are dismissed in full. Finally, Plaintiffs are precluded from recovering damages due to their emotional distress.

Charles P. Kocoras
United States District Judge

Dated:  November 29, 2012